IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEANDRE HOLLAND,<br><br>        Plaintiff,<br><br>  v.<br><br>CITY OF AKRON, RICHARD KUZNIK, CHRISTOPHER BROWN, and DOES 1–4,<br><br>        Defendants. | Case No. __24-cv-00014_____<br><br>Judge _____<br><br>**Complaint with Jury Demand** |

### I. Introduction

1.    This case arises out of a retaliatory and malicious prosecution that was instituted against Plaintiff Deandre Holland by his employer, the City of Akron Police Department, and two of its police officers. Plaintiff, as a member of the Ohio Army National Guard, routinely gave notice to the Akron Police Department of scheduled drills and training so that he could be excused from work on those days. For two years, Plaintiff submitted these notices, without issue, by regularly using a template that was provided to him by his commanding officer in the Guard, with permission to adjust the dates as appropriate. In 2020, the scheduling of National Guard drilling was substantially complicated by the COVID-19 pandemic, and Holland had notified his supervisors at the Akron P.D. in October of that year of the likelihood that he would need to complete certain drills by year end to maintain his eligibility to train as an Army pilot. On December 25, 2020, Plaintiff submitted formal notice that he would be performing drills and training from December 28 to January 1, 2021. However, unlike in the past, Plaintiff's superiors at the APD, Defendants Kuznik and Brown, decided to take issue with Plaintiff's notice.

2.    This sudden change in attitude notably occurred shortly after Plaintiff complained about racial discrimination by Defendant Kuznik. In addition, the timing of Plaintiff's leave for drilling was

inconvenient for Kuznik, who was responsible for staffing during the holiday period, and had scheduled Holland to work on December 28 and 29 despite his knowledge of the likelihood that he would need to drill on those days. As a result, Kuznik took the opportunity to retaliate against Plaintiff in response to his legitimate exercise of his rights, and proceeded, along with Brown to conduct an intentionally flawed investigation with the goal of instituting a criminal prosecution against Plaintiff based on the "drill letters" Plaintiff had submitted.

3. Defendants Kuznik and Brown intended to show that Plaintiff had been improperly forging "drill letters" as part of a fraudulent scheme to get time off work during the holidays and receive improper supplemental pay while not actually performing drills. Instead, Defendants learned (1) that Plaintiff had been given express permission by his superior officer at the Guard to modify and use the form letter as needed to give notice to APD of drill dates, (2) that Plaintiff was in fact drilling or training on all the dates set forth in his submitted letters, and (3) all of the supplemental pay that Plaintiff received was properly tied to his actual time spent drilling. Consequently, there was no forgery, no fraud, and no theft. Nevertheless, Defendants continued to insist that Plaintiff had broken the law and pressed for Plaintiff to be prosecuted.

4. Just as Defendants intended, Plaintiff was indeed prosecuted on three felony counts. But after just 1 day of trial, the trial judge granted a Rule 29 motion for acquittal. The trial judge found that no reasonable juror could find Plaintiff guilty of any of the alleged crimes, observing that "if this is a theft offense and if he intended to commit an offense, this is the most loosey-goosey theft I have ever seen in my 30 years as a judge." This observation—that there was no evidence that Plaintiff had knowingly engaged in theft, forgery, or tampering—was based on the same information that Defendants had known all along, which they ignored while insisting that Plaintiff be prosecuted.

5. Plaintiff's acquittal, however, does not redress or remedy the violations of his civil rights or the deprivation of liberty and reputational damage he suffered due to the malicious and retaliatory

actions by Defendants. Thus, as alleged herein, Plaintiff is entitled to damages for the egregiously unconstitutional, unlawful, and harmful treatment he endured at Defendants' hands.

## II. Jurisdiction and Venue

6. This Court has federal-question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for the claims raised under 42 U.S.C. § 1983 and 38 U.S.C. § 4311 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for claims raised under Ohio law.

7. This Court has jurisdiction over Defendants because they are residents or political subdivisions of the State of Ohio.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts upon which the claims in this litigation are based and the damages resulting therefrom occurred in Summit County, Ohio.

## III. Parties

9. Plaintiff Deandre Holland is an individual residing in Summit County, Ohio.

10. Defendant Richard Kuznik is and was at all relevant times a lieutenant with the City of Akron, Ohio Police Department. On information and belief, he is a resident of Summit County. He is sued in his individual and official capacities.

11. Defendant Christopher Brown is and was at all relevant times a captain with the City of Akron, Ohio Police Department. On information and belief, he is a resident of Summit County. He is sued in his individual and official capacities.

12. Defendants John Doe 1, John Doe 2, John Doe 3, and John Doe 4 are other officers of the Akron Police Department who, on information and belief, conspired with Kuznik and Brown to institute a malicious and retaliatory prosecution against Holland.

13. Defendant City of Akron is a municipal corporation and political subdivision of the State of Ohio located in Summit County.

3

### IV. Facts

**A.     For over two years, Deandre Holland, as a member of the Ohio National Guard, notifies the Akron Police Department of dates and times that he is unavailable for work using a form "drill letter" that was given to Holland by his commanding officer, with permission to edit and use the letter as needed to notify Holland's employer of future drill dates.**

14.     Plaintiff Deandre Holland joined the City of Akron Police Department as a patrol officer in March of 2018. At that time, Holland was also a sergeant in the Ohio Army National Guard.

15.     As part of his Guard duties, Holland was required to attend various training and drills from time to time. In advance of those drills, Holland would give notice to the Akron Police Department so that he could take leave from work at those times.

16.     To facilitate such notice, Holland's division of the Guard offered to prepare written letters for members to submit to their employers in advance of scheduled drills. Members can also request letters whenever drill dates change, which is something that occurs often.

17.     When Holland first joined the Akron Police Department in 2018, the superior officer that provided such "drill letters" to Holland was U.S. Army Sergeant Bradley Hoffman. In the summer of 2018, Sgt. Hoffman provided a Word formatted version of the "drill letter" to Holland, with permission for Holland to modify the letter as needed to reflect future drill dates for employer notice. Such a procedure is expressly permitted by military rules. Sgt. Hoffman recognized that law enforcement officers often work late hours and their need for documents could come at any time, so to avoid having to fulfill requests at all hours, he trusted certain guard members to use a form letter with his signature and modify drill dates as needed for future drills. Holland was one such trustworthy Guard member since he was a non-commissioned officer and had a high degree of integrity.

18.     Over the next two years, Holland regularly used the form letter provided to him by Sgt. Hoffman to give APD notice of drill dates with the National Guard. No one at APD took issue with any such letters provided by Holland until December 2020, as discussed below.

**B.      Holland complains to his union representative about discriminatory treatment of black police officers by Defendant Kuznik, causing Kuznik to retaliate, including by instituting a retaliatory criminal investigation against Holland based on the form "drill letters" that Holland had been submitting for years to the Akron Police Department, without issue, relating to Holland's service in the National Guard.**

19.     According to data published by the U.S. Census bureau in 2022, at least 29.5% of Akron's population is Black or African American. As of the filing of this Complaint, only three of approximately 75 sergeants, only one out of approximately 21 lieutenants, and only one out of approximately 8 captains in the Akron Police Department are Black or African American.

20.     In August of 2020, Holland complained to his union representative about Defendant Kuznik's discriminatory treatment of black police officers and asked for assistance in preparing a grievance against Kuznik. The union representative advised Holland that he would discuss the matter directly with Kuznik in hopes of avoiding escalating the situation by the filing of a formal grievance.

21.     After Holland's union representative communicated Holland's complaint about discriminatory treatment to Kuznik, Kuznik escalated his mistreatment of Holland, including by communicating with him in an increasingly hostile and demeaning manner that was wholly improper given the Holland's status as an officer, and by denying Holland scheduling requests to which Holland was entitled by law and well-established departmental policy.

22.     That hostility escalated even further in December 2020, after Holland submitted a drill letter advising that he would be drilling with the Guard from December 28, 2020, to January 1, 2021. In 2020, the scheduling of National Guard drilling was substantially complicated by the COVID-19 pandemic, and Holland had notified his supervisors at the Akron P.D., including Kuznik, in October of that year of the likelihood that he would need to complete certain drills by year end to maintain his eligibility to train as an Army pilot. On December 25, 2020, Plaintiff submitted formal notice that he would be performing drills and training from December 28 to January 1, 2021. Kuznik purportedly took issue with the letter because it noted drill dates over the New Year's

holiday and was dated December 25, 2020. However, the date of the letter does not suggest any wrongdoing since Holland had express permission to create such letters himself at any time based on the template provided to him by Sgt. Hoffman. And Holland did in fact attend drills and training on each day between December 28, 2020, and January 1, 2021.

**C.    Defendants Kuznik and Brown conduct a retaliatory investigation and improperly frame Holland's authorized practice of using a template "drill letter" for notification of drill dates as criminal conduct, even after learning that Holland had authorization to edit and use the template letter and that Holland was in fact drilling with the National Guard during the periods identified in Holland's letters.**

23.    Defendant Kuznik was also inconvenienced by the fact that Holland's military obligations affected the APD's staffing during the New Year's holiday period. Kuznik was responsible for staffing during the holiday period, and had scheduled Holland to work on December 28 and 29 despite his knowledge of the likelihood that he would need to drill on those days. Because APD has a minimum staffing requirement, Kuznik set out to support a charge that Holland was taking vacation time away from other more senior officers. This only added to the animus that Kuznik already felt for Holland after having learned about Holland's complaints about racial discrimination just four months prior.

24.    Determined to retaliate against Holland and punish him for these perceived slights and inconveniences, Kuznik and Brown proceeded to "investigate" the drill letters submitted by Holland. They initially spoke to Army Sergeant Hoffman, who confirmed that he did not himself author many of the drill letters Holland submitted to APD. Based on this, Kuznik and Brown thought they could build a criminal case for forgery. They also hoped to show that Holland received differential pay from APD for drill dates that Holland did not actually attend.

25.    However, after further investigation, Kuznik and Brown learned that Sgt. Hoffman had given Holland permission to use the form letter as a template for drill date notices, as Hoffman himself admitted to Kuznik and Brown. Kuznik and Brown also learned that Holland was in fact drilling on the dates he represented in his drill letters. In fact, on December 29, 2020, when Kuznik

and Brown went to the armory to speak with Sgt. Hoffman, they saw that Holland was already there. Nevertheless, despite learning these crucial facts, which undermined any notion of probable cause, Kuznik and Brown still continued to pursue a malicious prosecution against Holland for theft, forgery, and tampering, hoping that a conviction that would justify termination of Holland's employment.

**D.    Holland is subjected to a felony criminal prosecution based on Defendants' improper and retaliatory investigation and is ultimately acquitted on all counts after the trial judge granted Holland's motion for acquittal under Ohio Crim.R. 29.**

26.    The case against Holland proceeded to trial on May 12, 2022. Following the State's presentation of evidence, Holland moved for acquittal under Ohio Crim.R. 29. The trial court granted Holland's motion, finding that no reasonable juror could find Holland guilty of theft, forgery, or tampering. The judge noted that all three charges required a mens rea of "knowingly" and the fact that Holland had permission to modify and use the form letter provided by Sgt. Hoffman and the fact that Holland was clearly drilling or attempting to drill during the all dates he specified in his submitted drill letters meant that no reasonable person could conclude that Holland knowingly engaged in any theft, forgery, or tampering. The trial judge also noted that Holland did not receive any unearned amounts and actually appeared to be owed money. In finding that no reasonable juror could find Plaintiff guilty of any of the alleged crimes, the trial judge stated on the record that "if this is a theft offense and if he intended to commit an offense, this is the most loosey-goosey theft I have ever seen in my 30 years as a judge."

27.    Following his acquittal on May 12, 2022, Holland filed a complaint of discrimination and retaliation against the Defendants with the Ohio Civil Rights Commission on September 12, 2022. The OCRC issued Holland a "right to sue" letter on June 1, 2023. By operation of law, the statute of limitations on Holland's discrimination and retaliation claims tolled for the 262 days between the filing of his OCRC Complaint on September 12, 2022 and his receipt of the "right to sue" letter on June 1, 2023.

## V. Causes of Action

### Count 1
### Unreasonable Seizure/Malicious Prosecution
### Fourth Amendment and 42 U.S.C. § 1983
### (against Defendants Kuznik, Brown, and John Does 1–4)

28. Plaintiff incorporates the previous allegations by reference.

29. This Count 1 is alleged against Defendants Kuznik, Brown, and John Does 1–4 in their personal capacities.

30. Plaintiff had a clearly established right under the Fourth Amendment to the U.S. Constitution to be free from malicious prosecution and seizure/detention without probable cause.

31. The actions of Kuznik, Brown, and the John Doe Defendants, as alleged herein, influenced the decision to initiate a felony criminal prosecution against Holland for theft in office under R.C. 2921.41(A)(2)(B), tampering with records under R.C. 2913.42(A)(1)(B)(4), and forgery under R.C. 2913.31(A)(1)(C)(1)(b). Defendants had no probable cause to believe Holland committed these alleged crimes. Defendants were aware of the lack of probable cause, and the criminal proceedings against Holland would not have been instituted in the first place were it not for Defendants' inadequate investigation and retaliatory motive to get Holland criminally prosecuted, even after obtaining exculpatory information showing that Holland had not committed a crime.

32. As a consequence of the legal proceedings against him, Holland suffered a deprivation of liberty. As a direct and proximate result of Defendants' unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Holland's rights, Holland has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, lost income and mental, emotional, and physical pain and suffering. Holland is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

**Count 2**
**Unconstitutional Custom, Policy, and Practice**
**42 U.S.C. § 1983, Fourteenth Amendment, Fifth Amendment, First Amendment,**
**and *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978)**
**(against the City of Akron)**

33. Plaintiff incorporates the previous allegations by reference.

34. This Count 2 is alleged against the City of Akron, which ordered, permitted, tolerated, or otherwise conspired to ensure Holland was maliciously prosecuted without probable cause. Alternatively, the City of Akron was deliberately indifferent to a pattern and practice whereby its officials engage in retaliatory investigations and malicious prosecutions against officers who complain about racial discrimination or miss work during holiday periods due to National Guard service obligations.

35. The City of Akron, through its unconstitutional custom, policy, and practice, has deprived Holland of clearly established civil rights as set forth in Count 1 above.

36. As a direct and proximate result of this unlawful and unconstitutional custom, policy, and practice, Holland has suffered and will continue to suffer economic and non-economic damages for which the City of Akron is liable, including, but not limited to, lost income and mental, emotional, and physical pain and suffering. Holland is also entitled to punitive damages based on this unlawful and unconstitutional custom, policy, and practice. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

**Count 3**
**Title VII Retaliation**
**42 U.S.C. § 2000e-3(a)**
**(against all Defendants)**

37. Plaintiff incorporates the previous allegations by reference.

38. This Count 3 is alleged against Defendant City of Akron and Defendants Kuznik, Brown, and Does 1–4, acting in their official capacities.

39. Holland engaged in a protected activity when he complained to his union representative

about racial discrimination by Defendant Kuznik with respect to his treatment of black officers and indicated his intention to file a formal grievance against Kuznik.

40. Kuznik was informed about Holland's complaint and intended exercise of his rights by Holland's union representative.

41. After learning of Holland's opposition to racial discrimination, Kuznik took adverse action against Holland through hostile and retaliatory treatment, including unwarranted criticism of Holland's work. Kuznik, Brown, and the Doe Defendants, as Holland's superiors, also commenced an inadequate and flawed investigation that was designed to institute a criminal prosecution against Holland, for which there was no probable cause.

42. The adverse actions taken by Defendants Kuznik, Brown, and Does 1–4 were directly caused, in part, by Holland's opposition to racial discrimination by Kuznik.

43. As a direct and proximate result of this retaliatory conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Holland's civil rights under Title VII of the U.S. Code to oppose discrimination in his workplace, Holland has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to lost income and mental, emotional, and physical pain and suffering. Holland is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

**Count 4**
**Title VII Racial Discrimination**
**42 U.S.C. § 2000e**
**(against Defendants City of Akron and Kuznik)**

44. Plaintiff incorporates the previous allegations by reference.

45. This Count 4 is alleged against Defendant City of Akron and Defendant Kuznik, acting in his official capacity.

46. Holland, an African American man, is a member of a protected racial class.

47. Holland was subjected to unwelcome racial harassment by his supervisor, Defendant

Kuznik, while employed as a police officer with the Akron Police Department.

48.     Holland was harassed based on his race.

49.     The harassment of Holland created a hostile work environment.

50.     Defendants failed to take reasonable care to prevent and correct the harassing behavior even after Holland had reported Kuznik's mistreatment of black officers, including Holland himself.

51.     As a direct and proximate result of this discriminatory conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Holland's civil rights under Title VII of the U.S. Code to be free from racial discrimination, Holland has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to lost income and mental, emotional, and physical pain and suffering. Holland is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

**Count 5**
**USERRA Discrimination**
**38 U.S.C. § 4311**
**(against all Defendants)**

52.     Plaintiff incorporates the previous allegations by reference.

53.     This Count 5 is alleged against Defendant City of Akron and Defendants Kuznik and Brown, and Does 1–4, acting in their official capacities.

54.     Holland exercised a right conferred by USERRA, 38 U.S.C. § 4301, *et seq.*, when he notified the Akron Police Department that he would be participating in drills and trainings for the National Guard from December 28, 2020 to January 1, 2021.

55.     Defendants Kuznik, Brown, and Does 1–4 were inconvenienced by Holland's need for leave during this period for military duties occurred during a holiday period, which affected the department's staffing during this time.

56.     In retaliation for the inconvenience caused by Holland's leave for drills during the holiday period, Kuznik, Brown, and Does 1–4 engaged in a flawed and inadequate investigation that was

11

intended to institute a malicious criminal prosecution against Holland for conduct that they had no probable cause to believe was criminal.

57. Holland's exercise of his rights under USERRA was a substantial or motivating factor for the adverse, retaliatory actions taken by Defendants.

58. As a direct and proximate result of this retaliatory conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Holland's membership in the National Guard and his clearly established rights under USERRA, Holland has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to lost income and mental, emotional, and physical pain and suffering. Holland is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

### Count 6
### Discriminatory retaliation under Ohio Law
### O.R.C. § 4112.02(I)
### (against all Defendants)

59. Plaintiff incorporates the previous allegations by reference.

60. This Count 6 is alleged against Defendant City of Akron and Defendants Kuznik, Brown, and Does 1–4 acting in their official capacities.

61. Holland engaged in a protected activity when he complained to his union representative about racial discrimination by Defendant Kuznik with respect to his treatment of black officers and indicated his intention to file a formal grievance against Kuznik.

62. Kuznik was informed about Holland's complaint and intended exercise of his rights by Holland's union representative.

63. After learning of Holland's opposition to racial discrimination, Kuznik took adverse action against Holland through hostile and retaliatory treatment, including unwarranted criticism of Holland's work. Kuznik, Brown, and Does 1–4, as Holland's superiors, also commenced an inadequate and flawed investigation that was designed to institute a criminal prosecution against

Holland, for which there was no probable cause, in retaliation for Holland's opposition to racial discrimination by Kuznik.

64. The adverse actions taken by Defendants were directly caused, in part, by Holland's opposition to racial discrimination by Kuznik.

65. As a direct and proximate result of this retaliatory conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Holland's civil rights under R.C. 4112.02(I) to be free from retaliation for opposing unlawful discrimination, Holland has suffered and will continue to suffer damages, including but not limited to lost income and mental, emotional, and physical pain and suffering. Holland is also entitled to punitive damages based on this unlawful conduct.

**Count 7**
**Racial Discrimination under Ohio Law**
**O.R.C. § 4112.02(A)**
**(against Defendants City of Akron and Kuznik)**

66. Plaintiff incorporates the previous allegations by reference.

67. This Count 7 is alleged against Defendant City of Akron and Defendant Kuznik, acting in his official capacity.

68. Holland, an African American man, is a member of a protected racial class.

69. Holland, while employed as a police officer with the Akron Police Department, was subjected to unwelcome harassment from Defendant Kuznik.

70. Holland was harassed based on his race.

71. The harassment of Holland had the purpose or effect of creating an intimidating, hostile, or offensive work environment.

72. Defendant City of Akron is liable for the discriminatory harassment of its employee, Defendant Kuznik.

73. As a direct and proximate result of this discriminatory conduct, which was intentional and

13

showed a spirit of ill-will, hatred, and wanton disregard for Holland's civil rights under R.C. 4112(A) to be free from racial discrimination, Holland has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to lost income and mental, emotional, and physical pain and suffering. Holland is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

## VI. Prayer for Relief

Wherefore, Plaintiff Deandre Holland respectfully prays for judgment against Defendants in an amount in excess of $75,000.00 together with punitive damages, attorneys' fees, costs, expenses, and any other relief to which Plaintiff may be entitled or that the Court deems equitable and just.

## VII. Jury Demand

Plaintiff demands a trial by jury on all issues within the Complaint.

Respectfully submitted,

*/s/ Peter Pattakos*
Peter Pattakos (0082884)
Zoran Balac (0100501)
Gregory Gipson (0089340)
THE PATTAKOS LAW FIRM LLC
101 Ghent Rd., Fairlawn, OH 44333
P: 330.836.8533 | F: 330.836.8536
peter@pattakoslaw.com
zbalac@pattakoslaw.com
ggipson@pattakoslaw.com

*Attorneys for Plaintiff Deandre Holland*